United States District Court
District of Massachusetts

```
_____
                                  )
MARGARET HOWE, A.H., D.H., and    )
R.H.,                             )
          Plaintiffs,             )
                                  )   Civil Action No.
          v.                      )   10-10116-NMG
                                  )
THE TOWN OF NORTH ANDOVER, MARK   )
F. DELANEY, EDWARD DOWNER, DEBRA  )
SIMON, STEPHEN WALSH, DAVID       )
GRIFFIN, WILLIAM ROBERTSON,       )
KEVIN EMMETT, MICHAEL CURRIER,    )
SCOTT MACKENZIE, PATRICK          )
CANDELIERE, BRYAN W. ERICKSON,    )
SEAN MCGARRY, JODI A. GERARDI,    )
DAN CIARDIELLO, MICHAEL J.        )
MISKELL, RICHARD STANLEY, JOHN    )
CARNEY, CHARLES GRAY, ROBERT      )
HOLLAND, ROBERT BARTER, SEAN      )
DALEY, JOY STAUDE, ROBERT         )
HILLNER, FRANK G. COUSINS, JR.,   )
ROCHARD DAJORY, and BRET GRAHAM,  )
          Defendants.             )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Margaret E. Howe ("Mrs. Howe") brings suit pursuant to 42 U.S.C. § 1983, <u>inter alia</u>, as administratrix of the estate of her husband Kenneth Howe ("Mr. Howe") and on behalf of herself and her three children (collectively "the plaintiffs"), against 26 individual defendants, including members of the Massachusetts State Police ("the MSP"), the North Andover Police Department ("the NAPD") and the Essex County Sheriff's

Department ("the ECSD"), as well as the Town of North Andover ("the Town") (collectively "the defendants").

## I.   **Factual Background**

According to the Complaint, the evening of November 25, 2009 (the day before Thanksgiving), Mr. Howe was traveling with Michael Garbauskas ("Garbauskas") and Michael Barbour ("Barbour") on Route 114 in North Andover, Massachusetts, after purchasing a boat in Worcester, Massachusetts.  Garbauskas was driving, while Mr. Howe sat in the front passenger seat smoking a marijuana cigarette.  As they approached a sobriety checkpoint set up by the MSP (working with the NAPD and the ECSD), Garbauskas slowed the vehicle and Mr. Howe tried to put out his cigarette and fasten his seatbelt.

At the checkpoint, an unknown male officer approached the driver side of the vehicle and MSP Trooper Jodi Gerardi ("Gerardi") approached the passenger side.  One or more of the officers ordered both Mr. Howe and Garbauskas out of the car. The exact exchange between Mr. Howe and Trooper Gerardi is unclear but Trooper Gerardi forcibly removed Mr. Howe from the vehicle and accused him of assaulting her.  Ten to twenty law enforcement officers immediately swarmed Mr. Howe, who stood five foot eight inches tall and weighed approximately 165 pounds.

At around 11:20 p.m., Carl Russo ("Russo"), a photographer for the Lawrence Eagle Tribune, was leaving his office which is

located near the checkpoint and saw the scene as it unfolded.
From 11:20 p.m. to 11:31 p.m., he took 43 pictures of the
incident which showed, _inter alia_, officers surrounding Mr. Howe
while he was on the ground, as well as officers lying on top of
him and placing leg shackles on him.

Some time after 11:31 p.m., Mr. Howe was driven four miles
to the MSP Barracks.  At 12:05 a.m., the Andover Fire Department
arrived at the barracks to take Mr. Howe to Lawrence General
Hospital, where he arrived at 12:17 a.m. on November 26th and was
pronounced dead on arrival.  The Office of the Chief Medical
Examiner (the "OCME") issued an amended death certificate
indicating that Mr. Howe's death was a "homicide" caused by
"blunt impact of head and torso with compression of chest."

## II.  **Procedural History**

On January 26, 2010, plaintiffs filed a complaint alleging
claims under 42 U.S.C. § 1983 against the officer defendants for
violations of Mr. Howe's Fourth, Eighth and Fourteenth Amendment
rights (Count I), against their supervisors for supervisory
liability (Count II), against the Town for _Monell_ liability
(Count III) and against all defendants for conspiracy (Count IV).
The Complaint also alleges various state claims, including a
violation of the Massachusetts Civil Rights Act (Count V),
assault (Count VI), battery (Count VII), intentional infliction
of emotional distress with respect to Mr. Howe (Count VIII) and

loss of consortium for Mrs. Howe (Count XI) and her daughters
(Counts X-XII).

Pursuant to Mass. Gen. Laws ch. 258, § 4, the Complaint also
includes a statement of counts not yet alleged for negligence
(Counts XIII and XIV), wrongful death (Counts XV and XVI) and
conscious pain and suffering (Count XVII). Once Mrs. Howe
receives a response from the Town Manager of North Andover and
the Attorney General of Massachusetts, or six months pass without
one, she will move the Court to amend her Complaint and allege
those claims. To date, no action to amend has been taken.

The Complaint originally included ten additional defendants
who have since been dismissed without prejudice as follows:
William Brush, Eric Sewade, Michael Wilson, Gregory Brown and
Michael Reardon (March 9, 2010), Kevin O'Neil and Lawrence Kiely
(April 5, 2010), Richard Eubanks (February 11, 2011) and Frank
Puopolo and Michael Cook (March 2, 2011).

There are several pending motions and the Court addresses
each seriatim.

III. **Motion to Dismiss**

On May 27, 2010, MSP defendants Colonel Mark F. Delaney
("Delaney") and Lieutenant Edward Downer ("Downer") filed a
motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and
12(b)(6), arguing that the Complaint alleges only two facts with
respect to them and that no allegation of "any actual wrongdoing"

is made.  Plaintiffs opposed the motion to dismiss in June, 2010, and filed a supplemental memorandum in opposition in September, 2010.

### A.   Legal Standard

In order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level". Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied.  See Nollet, 83 F. Supp. 2d at 208.

Although the Court must accept as true all of the factual allegations contained in a complaint, that doctrine is not, however, applicable to legal conclusions.  Ashcroft v. Iqbal,

129 S. Ct. 1937, 1949 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. Id. Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

## B. Application

As an initial matter, the Court finds that, in addition to the Complaint itself, it may also consider the Arrest Report of Trooper Gerardi because the report was sufficiently incorporated by reference in the Complaint at ¶¶ 95-97. See Nollet, 83 F. Supp. 2d at 208.

### 1. Sovereign Immunity

The Eleventh Amendment immunizes state officials acting in their official capacities from suits for damages under 42 U.S.C. § 1983. See Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 699 (1st Cir. 1995). Plaintiffs admit that neither defendant Delaney nor Downer may be sued in his official capacity and "verbiage to such effect, if any, was set forth in error." Therefore, to the extent the Complaint alleges claims for damages against either defendant Delaney or Downer in his official capacity, those claims must be dismissed.

### 2. Section 1983 Claims

Section 1983 states:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress.

Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred" and is not itself a source of substantive rights.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Plaintiffs assert deprivations of Mr. Howe's federal constitutional rights in violation of 42 U.S.C. § 1983.  To prevail on a claim pursuant to § 1983, plaintiffs must prove that Mr. Howe's constitutional rights were violated by a person or persons acting under color of state law.  Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  Because the defendants do not dispute that they were acting under color of law, the Court will focus on whether their conduct deprived Mr. Howe of rights secured by the United States Constitution or federal law.

### 3. Defendant Colonel Delaney

With respect to defendant Delaney, the Complaint alleges Count II (§ 1983 supervisory liability) and Count IV (§ 1983 conspiracy) based on the following facts: 1) Delaney is a duly

appointed colonel of the MSP and 2) Delaney created the sobriety
checkpoint that was positioned on Route 114 on November 25, 2009.
Delaney denies that he "created" the checkpoint but agrees that,
for the purpose of the motion to dismiss, the Court must accept
plaintiffs' factual allegation as true.

Supervisory liability under § 1983 "may not be predicated
upon a theory of respondeat superior." Gutierrez-Rodriguez v.
Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); see also Monell v.
Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). In other words,
an official may not be held vicariously liable for the conduct of
his subordinate but rather may be found liable "only on the basis
of her own acts or omissions." See id. (citations omitted).

Absent participation in the challenged conduct, however, a
supervisor may be held liable for the acts of a subordinate if:
1) the subordinate's behavior results in a constitutional
violation and 2) the supervisor's action or inaction was
"affirmatively linked" to the behavior in that it could be
characterized as "supervisory encouragement, condonation or
acquiescence" or gross negligence amounting to "deliberate
indifference." Hegarty v. Somerset Cnty., 53 F.3d 1367, 1379-80
(1st Cir. 1995); see also Maldonado-Denis v. Castillo-Rodriguez,
23 F.3d 576, 582 (1st Cir. 1994) (requiring causal link between
supervisor's behavior and subordinate's conduct). A supervisor
need not have actual knowledge of the offending conduct to be

liable if he formulates a policy or engages in a custom that leads to the incident.  Brenes-Laroche v. Toledo-Davila, 682 F. Supp. 2d 179, 185 (D.P.R. 2010) (citing Maldonado-Denis , 23 F.3d at 582).  Mere negligence is inadequate to establish supervisory liability.  Febus-Rodriquez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994).

The Complaint alleges neither Delaney's personal participation in the challenged conduct nor his presence at the checkpoint the evening of Mr. Howe's death.  Indeed, the only relevance plaintiffs allege with respect to Delaney is that he created the checkpoint but there is no allegation that his creation of the checkpoint constituted the formulation of a policy that led to the incident.  Even if the Court assumes for the moment that the behavior of Delaney's subordinates resulted in a constitutional violation, the claim of supervisory liability with respect to Delaney must be dismissed because plaintiffs fail to allege a causal link with respect to any action or inaction by Delaney.  Delaney's supervisory status alone is insufficient to support a claim of supervisory liability.  Thus, Count II will be dismissed in its entirety for failure to state a claim with respect to defendant Delaney.

Turning to Count IV, although the Complaint contains conclusory allegations of conspiracy with respect to the defendants, it fails to support those claims with references to

material facts or with any factual allegations with respect to defendant Delaney. See, e.g., Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977). Thus, Count IV will be dismissed in its entirety with respect to defendant Delaney.

### 4. Defendant Lieutenant Downer

With respect to defendant Downer, the Complaint alleges Counts I, II and IV-XII based on the following facts: 1) Downer is a duly appointed lieutenant of the MSP, 2) Downer was listed as the "Officer-in-Charge" on the "Massachusetts State Police Sobriety Checkpoint Duty Assignments", 3) leg shackles were placed on Mr. Howe at 11:25 p.m. and 4) Trooper Gerardi filed an arrest report regarding the incident which states:

> once [Mr. Howe] was handcuffed and placed in leg irons, he was placed in Trooper McKenzie's cruiser for transport to SP Andover per order of Lt. Downer.

From those allegations, the Court may infer that Downer was not only present at the checkpoint but also in charge, aware of the incident with Mr. Howe and giving orders with respect to his treatment.

The Complaint also alleges actions taken by groups of unspecified (or perhaps unknown) officers that occurred over the course of 11 minutes: 1) 10-20 officers "swarmed" Mr. Howe, 2) 7-12 officers stood "in very close proximity" to him, 3) 1-4 officers physically laid on top of Mr. Howe and restrained him and 4) 2-7 officers picked up Mr. Howe and "dragged" him to the

cruiser.  The Court may infer that Downer was among those officers or, at the very least, aware of the actions of such a large number of the officers listed as his subordinates on the checkpoint assignment list.

### a.  Count I

The motion to dismiss Count I of the Complaint which alleges various constitutional violations will be denied with respect to Downer because, <u>inter alia</u>, the Complaint alleges sufficient facts to state a claim for excessive force.  An excessive force claim in the context of an arrest must be analyzed under the objective reasonableness standard of the Fourth Amendment, viewing the facts and circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  <u>Graham</u> v. <u>Connor</u>, 490 U.S. 386, 394-96 (1989); <u>Morelli</u> v. <u>Webster</u>, 552 F.3d 12 (1st Cir. 2009).  In evaluating the reasonableness of the force used, the Court may consider: 1) the severity of the crime at issue, 2) whether the suspect poses an immediate threat to the safety of the officers or others and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  <u>Alexis</u> v. <u>McDonald's Rests. of Mass.</u>, 67 F.3d 341, 352-53 (1st Cir. 1995) (citing <u>Graham</u>, 490 U.S. at 396); <u>see also</u> <u>Farrah</u> v. <u>Gondella</u>, 725 F. Supp. 2d 238 (D. Mass. 2010).

In essence, the Complaint alleges that although Mr. Howe had a marijuana cigarette and was not wearing his seatbelt, he was of slight build, unarmed and did not resist arrest. Even though Mr. Howe did not strike Trooper Gerardi, she screamed "he assaulted me!" which resulted in many officers swarming Mr. Howe, with some of them lying on top of him, shackling him and placing him in a police cruiser. On those allegations, where Mr. Howe's crime, if any, was not severe and he was unarmed and not actively resisting arrest, the swarm of multiple officers, including several sitting on Mr. Howe and leg shackles being placed on him after he had already been restrained, was unreasonable. Because Downer gave the order to place leg shackles on Mr. Howe and, as the "Officer-in-Charge" of the checkpoint was plausibly giving orders as the scene unfolded, there are sufficient facts to state a claim for excessive force with respect to defendant Downer.

### b.   Count II

Defendant Downer's motion will be denied with respect to Count II which alleges supervisory liability under § 1983. As a supervisor, Downer may be held liable if his action or inaction is affirmatively linked to the behavior of a subordinate that resulted in a constitutional violation. See Hegarty, 53 F.3d at 1379-80. The Complaint alleges sufficient facts to find that 1) Downer gave orders that caused his subordinates to engage in constitutional violations and/or 2) Downer's presence and command

of the checkpoint but failure to take action to prevent the
constitutional violations constituted condonation or deliberate
indifference.

### c.   Count IV

The motion to dismiss will be allowed with respect to Count
IV which alleges a conspiracy under § 1983.  Although the
Complaint contains conclusory allegations of conspiracy, it fails
to support those claims with references to material facts or with
any factual allegations with respect to defendant Downer.  <u>See,
e.g.,</u> <u>Slotnick</u>, 560 F.2d at 33.

### d.   Counts V-XII

Defendant Downer's sole contention pursuant to Fed. R. Civ.
P. 12(b)(6) is that there are no facts alleged and in a footnote,
he cursorily argues that the remaining counts should be dismissed
for that reason.  For the reasons already stated, the Court finds
that there are sufficient facts alleged with respect to defendant
Downer to withstand the motion to dismiss.  Because defendant
fails to argue alternative grounds for dismissal with respect to
those claims, despite having an opportunity to do so, the Court
will deny the motion to dismiss with respect to Counts V-XII.

### e.   Qualified Immunity

Pursuant to Fed. R. Civ. P. 12(b)(1), defendant Downer
raises the defense of qualified immunity with respect to Counts
I, II and IV.  Because "it is not always possible to determine

before any discovery has occurred whether a defendant is entitled to qualified immunity, [] courts often evaluate qualified immunity defenses at the summary judgment stage." Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010); Isom v. Town of Warren, R.I., 360 F.3d 7, 9 (1st Cir. 2004) (noting excessive force cases often resolved on qualified immunity ground on summary judgment or at trial). An official is entitled to qualified immunity unless: 1) the facts that plaintiffs have alleged or shown make out a violation of a constitutional right and 2) the right at issue was "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 816 (2009). Under the second prong, the Court examines whether the right was sufficiently clear that a reasonable official

> would understand that what he is doing violates that right
> [and whether based on the facts of the particular case] a
> reasonable defendant would have understood that his conduct
> violated the plaintiffs' constitutional rights.

Walden v. City of Providence, R.I., 596 F.3d 38, 52 (1st Cir. 2010) (citations omitted).

Because the Complaint sufficiently alleges a violation of the Fourth Amendment and the constitutional right to be free from excessive use of force by officers during an arrest has long been recognized, see Graham, 490 U.S. at 394, the Court finds that, at this stage in the proceedings, defendant Downer does not appear to be entitled to qualified immunity. As the First Circuit has recognized, the qualified immunity determination may be difficult

to make before any discovery has occurred.  Thus, defendant

Downer may raise the defense of qualified immunity at a later

stage in the proceedings.

In sum, the motion to dismiss will be, with respect to 1)

defendant Delaney, allowed for all claims, and 2) defendant

Downer, allowed for all claims brought against him in his

official capacity and Count IV but otherwise denied.

## IV.  **Motion for Order for Criminal Records**

In August, 2010, defendant Michael J. Miskell ("Miskell")

moved, apparently pursuant to Mass. Gen. Laws ch. 6, § 172(c),

for a court order for the criminal and/or probation records of

Mr. Howe, contending, <u>inter alia</u>, that Mr. Howe's criminal

history may be sought by the attorney of record in civil

litigation for trial strategy or witness impeachment purposes.

In opposition, plaintiffs argue that Criminal Offender Record

Information ("CORI") regulations do not permit access to Mr.

Howe's records.

Pursuant to Mass. Gen. Laws ch. 6, § 172(c), an attorney of

record in civil litigation may request CORI from the Department

of Criminal Justice Information Services ("DCJIS", formerly the

Criminal History Systems Board) for the purposes of witness

impeachment or trial strategy.  The attorney of record must 1)

submit a motion to the trial judge requesting approval of a

general grant of access to the specific individual's CORI and 2)

attach an affidavit to the motion stating that the CORI is to be used exclusively for witness impeachment or trial strategy in the civil suit.

Defendant Miskell's attorney has complied with the requirements of § 172(c) but both parties labor under the mistaken belief that Mr. Howe's CORI is subject to that section at all. In fact, Mass. Gen. Laws ch. 6, § 178B provides that:

> restrictions on the dissemination of [CORI] as provided in this chapter shall cease to exist at the death of the individual for whom a criminal justice agency has maintained [CORI].

Moreover, regulations promulgated by the DCJIS specifically provide that "restrictions on the access to and dissemination of an individual's CORI terminates upon his/her death." 803 Mass. Code Regs. § 2.04(11); <u>see also</u> <u>Globe Newspaper Co.</u> v. <u>Fenton</u>, 819 F. Supp. 89, 93 n.6 (D. Mass. 1993) (all records relating to deceased defendant available); <u>Roman Catholic Bishop of Springfield</u> v. <u>Travelers Cas. & Sur. Co.</u>, 3008 WL 650392, *4 n.6 (Mass. Super. Jan. 7, 2008) ("CORI dissemination restrictions terminate upon death of the individual whose privacy is at stake."). A decedent's CORI may be released upon request and with a valid death certificate and/or reasonable proof of death. <u>Id.</u>

Because Mr. Howe is deceased, his CORI, if any, is not subject to the restrictions of § 172(c) and may be released upon request. The Court will, therefore, deny defendant's motion as

moot (and unnecessary).

## V.    **Motion for Extension of Time**

The parties filed a joint motion to extend the deadlines for written discovery from January 31, 2011 to April 30, 2011 and to extend factual depositions from April 30, 2011 to June 30, 2011. Because all parties agree and the extensions will not affect other deadlines set by the Court, the Court will allow the motion.

## VI.    **Motion for Sanctions**

Pursuant to Fed. R. Civ. P. 30(d), plaintiffs move for sanctions against defense counsel Leonard Kesten ("Attorney Kesten") and ask for a hearing on the motion.  Rather than oppose the motions for sanctions on the merits, Attorney Kesten has moved to strike that motion on the ground that plaintiffs' counsel failed to comply with Local Rule 37.1 by filing the motion without waiting for the seven-day period to expire, although plaintiffs' counsel did leave a voice message for Attorney Kesten prior to filing the motion.

Because plaintiffs' counsel has neither opposed the motion to strike nor otherwise responded to the alleged failure to comply with Local Rule 37.1, the Court takes the timeline alleged by Attorney Kesten as true and will allow the motion to strike for failure to comply with the mandatory provision of Local Rule 37.1(a).  As a result, plaintiffs' motion for sanctions will be

denied without prejudice for failure to comply with Local Rule 37.1(a) and the request for oral argument will be denied.

## VII. **Motions re Psychiatric Records**

On February 28, 2011, Trooper Gerardi moved for an order permitting defendants to obtain the psychiatric records of plaintiffs Mrs. Howe, A.H. and D.H. on the ground that plaintiffs have alleged intentional infliction of emotional distress ("IIED") but have asserted the psychotherapist-patient privilege and refused to produce related documents. Plaintiffs opposed defendant's motion and simultaneously filed a motion to quash subpoena on the basis that IIED is only alleged on behalf of the decedent and that plaintiffs records are privileged.

Both parties err in combining consideration of the decedent with the plaintiffs themselves. First, turning to defendant's motion, defendant Gerardi is mistaken in asserting that plaintiffs have alleged IIED with respect to themselves. Rather, the Complaint alleges IIED with respect to Mr. Howe only (Count VIII). An IIED claim may survive the injured party's death pursuant to Mass. Gen. Laws ch. 228, § 1 such that the decedent's widow may proceed with the cause of action in her capacity as administratrix of the decedent's estate. Hernon v. Hernon, 908 N.E.2d 777, 781 (Mass. App. Ct. 2009) (citing Harrison v. Loyal Protective Life Ins. Co., 396 N.E.2d 987 (Mass. 1979)). Because defendant's motion seeks the psychiatric records of plaintiffs

rather than the decedent with respect to the IIED claim, it is inapposite and will be denied.

To the extent defendant's motion argues more broadly that plaintiffs' psychiatric records are discoverable because plaintiffs allege "emotional distress", defendant's motion will also be denied.  Plaintiffs do, in fact, allege "great emotional pain and distress" in each loss of consortium count (Count IX with respect to Mrs. Howe, Counts X-XII with respect to each daughter).  Because neither party disputes that the records at issue are, in fact, privileged, the Court assumes for the purpose of this motion that they are.

A plaintiff does not waive her patient-psychotherapist privilege merely by bringing a claim for loss of consortium or a "garden-variety" claim for emotional distress, such as allegations of "mental anguish, severe emotional distress...[or] emotional pain."  Sorenson v. H&R Block, Inc., 197 F.R.D. 199, 204-05 (D. Mass. 2000) (noting, by contrast, that claim of "mental damage" or "psychic damage" operates as a waiver).  The privilege is waived, however, if plaintiff calls the psychotherapist as a witness or introduces into evidence (including by plaintiff's own testimony) the substance of any privileged communication.  Vanderbilt v. Chilmark, 174 F.R.D. 225, 230 (D. Mass. 1997).  Although the substance of the communications is privileged, the facts regarding the occurrence

of psychotherapy, such as the name of the psychotherapist or dates and costs of treatment, are not privileged and thus are subject to disclosure.  <u>Sorenson</u>, 197 F.R.D. at 205; <u>Vanderbilt</u>, 174 F.R.D. at 230.  Here, plaintiffs' claims of loss of consortium and emotional distress with respect to themselves, without more, are insufficient to waive the patient-psychotherapist privilege.

Turning to plaintiffs' motion, plaintiffs argue that the subpoena addressed to "Massachusetts Health Operations" but apparently served on Richard P. Costigan, Psy.D. ("Costigan") should be quashed on the basis of psychotherapist-patient privilege.  The subpoena commands the production of the following documents for the years 2007-2009:

1) All applications by Mr. Howe for himself or any family member for MassHealth, Network Health or other free or reduced cost health insurance, and all renewal forms and applications, including all supporting documents and all statements of income by Mr. Howe.

2) All documents discussing, concerning or constituting any attempts to verify Mr. Howe's eligibility for himself or any family member for MassHealth, Network Health or other free or reduced cost health insurance, including approvals.

3) All records of claims made for treatment rendered to Mr. Howe.

It is unclear what the relationship is between Costigan and Massachusetts Health Operations.  Although plaintiffs seek to quash the subpoena in its entirety, the asserted psychotherapist-patient privilege protects only the substance of communications

between Mrs. Howe and/or her daughters and Costigan.  The Court presumes that Massachusetts Health Operations has records that might contain such privileged communications with Costigan.

Moreover, it is unclear whether Mr. Howe, with respect to whom the subpoena clearly seeks records, had a psychotherapist-patient privilege that could be asserted on his behalf, and even if so, Mrs. Howe, in her capacity as administratrix, has not yet asserted it.  See Dist. Att'y for Norfolk Dist. v. Magraw, 628 N.E.2d 24, 26 (Mass. 1994) (holding psychotherapist-patient privilege may be waived by administrator or executor of estate of deceased patient).  Plaintiffs advance no argument in support of quashing the subpoena with respect to Mr. Howe and thus, in that regard, the motion will be denied.

To the extent the records sought with respect to the plaintiffs are privileged, the subpoena will be quashed because plaintiffs have not waived their psychotherapist-patient privilege.  In so far as the subpoena seeks facts regarding the very occurrence of psychotherapy, however, that information is not privileged and thus is subject to disclosure.  See Sorenson, 197 F.R.D. at 205; Vanderbilt, 174 F.R.D. at 230.  With respect to plaintiffs themselves, therefore, the motion to quash will be allowed, in part, and denied, in part.

**ORDER**

In accordance with the foregoing,

1)   the motion of defendants Mark Delaney and Edward Downer to dismiss the complaint (Docket No. 103) is, with respect to defendant Delaney, **ALLOWED**, and, with respect to defendant Downer, for all claims brought in his official capacity and Count IV, **ALLOWED**, but otherwise, **DENIED;**

2)   defendant Michael J. Miskell's Motion for Order for Criminal Records of Kenneth Howe (Docket No. 151) is **DENIED as moot;**

3)   joint motion for extension of time (Docket No. 162) is **ALLOWED;**

4)   plaintiffs' motion for sanctions against defense counsel Leonard Kesten, Esq. (Docket No. 163) is, for failure to comply with Local Rule 37.1, **DENIED without prejudice;**

5)   plaintiffs' motion for hearing (Docket No. 166) is **DENIED;**

6)   Attorney Kesten's motion to strike (Docket No. 167) is **ALLOWED;**

7)   defendant Jodi Gerardi's motion for order to obtain psychiatric records (Docket No. 169) is **DENIED;** and

8)   plaintiffs' motion to quash subpoena (Docket No. 174) is, with respect to privileged communications between plaintiffs and Richard P. Costigan, Psy.D., **ALLOWED**, but is, with respect to Mr. Howe and otherwise, **DENIED.**


**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge

Dated March 23, 2011